STATE OF NORTH CAROLINA v. JAMES EARL EWELL

No. COA04-372

(Filed 18 January 2005)

**1. Evidence— expert medical testimony—sexual abuse in absence of physical evidence—plain error**

The trial court committed plain error in a first-degree sex offense, attempted statutory sex offense, statutory rape, and indecent liberties with a child case by admitting the opinion testimony of a doctor indicating it was probable that the minor child was a victim of sexual abuse in the absence of any physical evidence, because: (1) the improperly admitted opinion by a medical expert on the child's credibility prejudiced defendant in the eyes of the jury; and (2) the State presented no other evidence beyond what the child told other witnesses, and as such, the child's credibility was the strength of the State's case.

**2. Indecent Liberties; Rape; Sexual Offenses— defense of lawful marriage—validity of defense**

The trial court did not err by denying defendant's motion to dismiss the charges of first-degree sex offense, attempted statutory sex offense, statutory rape, and indecent liberties with a child based on the State's alleged failure to show that defendant and the child were not lawfully married during the period of time at issue, because: (1) even though the defense of marriage is valid for the charges of attempted statutory sex offense and statutory rape, defendant and the child could not be lawfully married when N.C.G.S. § 51-2(b1) states it is unlawful for any person under 14 years of age to marry, and the child in this case was between the ages of 11 and 13 during all the times and events at issue; and (2) the remaining charges of attempted first-degree sex offense of a child under the age of thirteen years, taking indecent liberties with a child who was thirteen years old, first-degree rape of a female under the age of thirteen years, and taking indecent liberties with a child under the age of thirteen, do not permit lawful marriage as a defense.

Appeal by defendant from judgments entered 5 November 2003 by Judge Thomas D. Haigwood in Martin County Superior Court. Heard in the Court of Appeals 18 November 2004.

STATE v. EWELL

[168 N.C. App. 98 (2005)]

*Attorney General Roy Cooper, by Assistant Attorney General Sue Y. Little, for the State.*

*Jeffrey Evan Noecker, for defendant-appellant.*

TYSON, Judge.

James Earl Ewell ("defendant") appeals from judgments entered after a jury found him to be guilty of: (1) attempted first-degree sex offense of a child under the age of thirteen years (03 CRS 1673); (2) attempted statutory sex offense of a victim who was thirteen years old (03 CRS 1674); (3) statutory rape of a victim who was thirteen years of age (03 CRS 1675); (4) taking indecent liberties with a child who was thirteen years old (03 CRS 1675); (5) first-degree rape of a female under the age of thirteen years (03 CRS 1676); and (6) taking indecent liberties with a child under the age of thirteen (03 CRS 1676). We vacate defendant's convictions and order a new trial.

## I. Background

Defendant dated J.H., a single mother of four children. T.G. is J.H.'s daughter, born on 22 May 1989. J.H. and her children lived in a small mobile home. Defendant occasionally stayed over at J.H.'s home.

The State's evidence tended to show defendant initially engaged in nonconsensual sexual intercourse with T.G. on 27 January 2001, when T.G. was eleven. T.G. testified that from that day until September 2002 defendant allegedly forced her to engage in sexual intercourse on "more than thirteen" occasions.

In October 2002, T.G. was diagnosed with Trichomonas, a sexually transmitted disease. T.G. initially told her mother that she had engaged in sexual relations with defendant's stepson, who may have transmitted the disease to her. However, defendant's stepson tested negative for the disease. T.G. then told her mother that defendant was sexually abusing her. She also spoke with Dr. Warren Webster, the school counselor, and Investigator Gregory Daniels ("Investigator Daniels") of the Martin County Sheriff's Office about the abuse. Dr. Webster reported the incidents to the Martin County Department of Social Services ("DSS"), who conducted an investigation. T.G. spoke with Investigator Daniels two more times. When T.G. initially returned with her mother, she recanted her story and stated that she had "made it up" because she thought defendant was trying to hurt

her mother. During her third interview, T.G. told Investigator Daniels that defendant had sexually abused her and that she lied earlier because she was scared of defendant.

Investigator Daniels and DSS referred T.G. to Dr. Kathleen Previll ("Dr. Previll") for a medical examination. Dr. Previll examined T.G. on 5 February 2003 and interviewed J.H. Dr. Previll found no signs of trauma surrounding T.G.'s vaginal area and could not reach an opinion of whether T.G. was sexually active based on the physical evidence. She noted that although Trichomonas could be contracted without sexual contact, it was unlikely.

Defendant was arrested on 23 June 2003. Defendant was later indicted for: (1) attempted first-degree sex offense; (2) attempted statutory sex offense; (3) statutory rape of person 13, 14, or 15; (4) indecent liberties with child; (5) first-degree statutory rape; and (6) indecent liberties with child.

Defendant pled not guilty and did not testify or offer any evidence at trial. He was found guilty of: (1) attempted first-degree sex offense of a child under the age of thirteen years; (2) attempted statutory sex offense of a victim who was thirteen years old; (3) statutory rape of a victim who was thirteen years of age; and (4) taking indecent liberties with a child who was thirteen years old. The trial court found defendant possessed a prior record level of IV based on ten misdemeanor convictions. The trial court sentenced defendant to two consecutive active sentences of not less than 339 nor more than 416 months each. Defendant appeals.

## II.  Issues

Defendant's assignments of error are whether the trial court erred: (1) in admitting the testimony of Dr. Previll opining that T.G. "probably suffered sexual abuse;" and (2) by failing to dismiss the charges due to insufficiency of the evidence that defendant and T.G. were not lawfully married. Defendant also asserts he was denied his constitutional rights to effective assistance of counsel when defendant's counsel failed to object to Dr. Previll's opinion testimony.

## III.  Admission of Dr. Previll's Opinion Testimony

[1] Defendant argues the trial court committed plain error by admitting the opinion testimony of Dr. Previll indicating it was "probable" that T.G. was a victim of sexual abuse in the absence of any physical evidence. We agree.

## A.  Preservation of Potential Error for Appellate Review

Rule 10(b)(1) of the North Carolina Rules of Appellate Procedure requires:

> In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context. It is also necessary for the complaining party to obtain a ruling upon the party's request, objection or motion. Any such question which was properly preserved for review by action of counsel taken during the course of proceedings in the trial tribunal by objection noted or which by rule or law was deemed preserved or taken without any such action, may be made the basis of an assignment of error in the record on appeal.

N.C.R. App. P. 10(b)(1) (2004). Assignments of error are generally not considered on appellate review unless an appropriate and timely objection was entered. *State v. Short*, 322 N.C. 783, 790, 370 S.E.2d 351, 355 (1988) (citing *State v. Reid*, 322 N.C. 309, 367 S.E.2d 672 (1988)); N.C. Gen. Stat. § 15A-1446(a) (2003).

Our review of the transcripts and record fails to show that defendant made a timely and specific objection when the State proffered Dr. Previll's opinion testimony into evidence. The State prefaced its question to Dr. Previll by stating to the trial court, "I'm not sure whether [defendant's counsel] is going to object to my next question . . . ." Following Dr. Previll's response, the trial court asked defendant's counsel, "Are you going to object to that?" She answered, "No, sir."

Under Rule 10(b)(1), defendant failed to preserve this assignment of error for review.

## B.  Plain Error Rule

Our Supreme Court adopted the plain error rule as an exception to Rule 10 in *State v. Odom*, 307 N.C. 655, 300 S.E.2d 375 (1983) (applied to assignments of error regarding jury instructions). A defendant seeking plain error review must "specifically and succinctly" argue that any error committed by the trial court amounted to plain error. *State v. Nobles*, 350 N.C. 483, 514-15, 515 S.E.2d 885, 904 (1999). The proponent must show that:

[A]fter reviewing the entire record, it can be said the claimed error is a *"fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done," or "where [the error] is grave error which amounts to a denial of a fundamental right of the accused," or the error has "resulted in a miscarriage of justice or in the denial to appellant of a fair trial" or where the error is such as to "seriously affect the fairness, integrity or public reputation of judicial proceedings" or where it can be fairly said "the instructional mistake had a probable impact on the jury's finding that the defendant was guilty."

*Odom*, 307 N.C. at 660, 300 S.E.2d at 378 (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir. 1982) (footnotes omitted), *cert. denied*, 459 U.S. 1018, 74 L. Ed. 2d 513 (1982)). Our Supreme Court has extended plain error review to issues concerning admissibility of evidence. *State v. Black*, 308 N.C. 736, 741, 303 S.E.2d 804, 807 (1983).

We examine the entire record to decide whether the error "had a probable impact on the jury's finding of guilt." *Odom*, 307 N.C. at 661, 300 S.E.2d at 379 (citation omitted). We determine whether, absent the error, would the jury have returned a different verdict. *State v. Riddle*, 316 N.C. 152, 161, 340 S.E.2d 75, 80 (1986).

Defendant properly argued in his brief with citations to relevant authority that the admission of Dr. Previll's opinion testimony constitutes plain error, warranting this Court's review of an otherwise unpreserved assignment of error.

### 1. Expert Medical Testimony on Sexual Abuse

N.C. Gen. Stat. § 8C-1, Rule 702(a) (2003) provides, "If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion." However, an expert's opinion testimony may not be used to establish or bolster the credibility of a witness. *State v. Heath*, 316 N.C. 337, 342, 341 S.E.2d 565, 568 (1986).

Our Supreme Court stated in *State v. Stancil*, "In a sexual offense prosecution involving a child victim, the trial court should not admit expert opinion that sexual abuse has *in fact* occurred because, absent physical evidence supporting a diagnosis of sexual abuse,

such testimony is an impermissible opinion regarding the victim's credibility." 355 N.C. 266, 266-67, 559 S.E.2d 788, 789 (2002) (citation omitted) (emphasis supplied).

In *State v. Dixon*, this Court stated:

> [A]n expert medical witness may render an opinion pursuant to Rule 702 that sexual abuse has in fact occurred *if* the State establishes a proper foundation, i.e. physical evidence consistent with sexual abuse. . . . However, *in the absence of physical evidence to support a diagnosis of sexual abuse, expert testimony that sexual abuse has in fact occurred is not admissible because it is an impermissible opinion regarding the victim's credibility.*

150 N.C. App. 46, 52, 563 S.E.2d 594, 598 (emphasis supplied) (citing *Stancil*, 355 N.C. 266, 559 S.E.2d 788), *per curiam aff'd*, 356 N.C. 428, 571 S.E.2d 584 (2002); *see also State v. Grover*, 142 N.C. App. 411, 418-19, 543 S.E.2d 179, 183-84 (Expert opinion testimony that a child has been sexually abused based solely on the child's statements lacks a proper foundation where no physical evidence of abuse is shown), *aff'd*, 354 N.C. 354, 553 S.E.2d 679 (2001); *State v. Dick*, 126 N.C. App. 312, 315, 485 S.E.2d 88, 90 (Where there was no clinical evidence to support a diagnosis of sexual abuse, experts' "opinions that sexual abuse had occurred merely attested to truthfulness of the child" witness and were inadmissible), *disc. rev. denied*, 346 N.C. 551, 488 S.E.2d 813 (1997); *State v. Trent*, 320 N.C. 610, 614, 359 S.E.2d 463, 465-66 (1987) (evidence that hymen was not intact was alone insufficient to support evidence of a diagnosis of sexual abuse).

However, "[w]hile it is impermissible for an expert, in the absence of physical evidence, to testify that a child has been sexually abused, it is permissible for an expert to testify that a child exhibits 'characteristics [consistent with] abused children.' " *Grover*, 142 N.C. App. at 419, 543 S.E.2d at 184 (alteration in original) (quoting *State v. Aguallo*, 322 N.C. 818, 821, 370 S.E.2d 676, 677 (1988)); *see also Stancil*, 355 N.C. at 267, 559 S.E.2d at 789 ("an expert witness may testify, upon proper foundation, as to the profiles of sexually abused children and whether a particular complainant has symptoms or characteristics consistent therewith."). This testimony is permitted "to inform the jury that the lack of physical evidence of abuse is not conclusive that abuse did not occur." *State v. Bush*, 164 N.C. App. 254, 258, 595 S.E.2d 715, 718 (2004) (citations omitted).

2. *State v. Couser*

This Court recently ruled on a similar issue in *State v. Couser*, 163 N.C. App. 727, 594 S.E.2d 420 (2004). In *Couser*, the defendant was charged with first-degree statutory rape and taking indecent liberties with a child. *Id.* at 729, 594 S.E.2d at 422. The victim testified that the defendant forced her to engage in sexual intercourse. *Id.* at 728, 594 S.E.2d at 421. "The State offered further corroborating evidence from the victim's mother, father, sister, and another acquaintance." *Id.* at 729, 594 S.E.2d at 422. Finally, the medical doctor who examined the victim following the alleged incident testified that "she performed an examination on the victim and that her only abnormal finding was the presence of two abrasions on either side of the introitus" and "her diagnosis was probable sexual abuse with abrasions consistent with the victim's history of sexual assault." *Id.* at 729, 594 S.E.2d at 422. On cross examination, the doctor testified that "the abrasions on the introitus could be caused by something other than a sexual assault." *Id.* at 729, 594 S.E.2d at 422. The defendant's counsel failed to object to the doctor's testimony. *Id.* at 729, 594 S.E.2d at 423.

This Court found the admission of the doctor's testimony to be plain error due to several factors: (1) the only evidence that directly linked defendant to the alleged incident was the victim's testimony as corroborated by the mother, father, sister, and an acquaintance; (2) the defendant submitted to a rape suspect kit with negative results; (3) the doctor's "opinion was based on her examination and the history of the victim as given to her;" (4) the abrasions the doctor observed on the victim's introitus "were not diagnostic nor specific to sexual abuse;" (5) no evidence was proffered to show the "victim's behavior or symptoms following the assault were consistent with being sexually abused;" and (6) the doctor's opinion testimony of "probable sexual abuse," could be "construed by the jury to include" an attempted rape and taking indecent liberties. *Id.* at 731-32, 594 S.E.2d at 423-24.

Here, the State offered expert medical opinion testimony through Dr. Previll based upon: (1) her physical examination of T.G.; (2) T.G.'s medical history; and (3) the existence of a sexually transmitted disease. The only physical indication of any sexual activity was T.G.'s diagnosis and treatment for Trichomonas. Dr. Previll testified that based upon the physical exam, "[t]here's no way . . . I could prove or disprove that she's had sexual intercourse or been sexually active." She found none of the physical indicators for sexual activity, such as vaginal trauma, tears in the hymen, or other associated injuries,

despite T.G.'s allegations of "more than thirteen" separate instances of sexual intercourse. *See State v. Moore*, 103 N.C. App. 87, 94, 404 S.E.2d 695, 699 (indications of sexual abuse include: (1) no hymenal tissue; (2) "ragged scar tissue;" (3) a urinary tract infection; and (4) a significantly larger than normal vaginal opening for a child that age), *disc. rev. denied*, 330 N.C. 122, 409 S.E.2d 607 (1991); *State v. Herring*, 322 N.C. 733, 739, 370 S.E.2d 363, 367-68 (1988) (bruising around throat indicated defendant choked victim in process of rape; red and swollen eyes showed defendant tried to "put her eyes out with his thumbs"). Rather, T.G.'s genital exam was within the "normal limits." Finally, on cross examination, Dr. Previll acknowledged that "I'm relying on the history [i.e., T.G.'s statements] being true," in giving her opinion of probable sexual abuse.

Following this Court's analysis in *Dixon* and *Couser* and our Supreme Court's decision in *Stancil*, we conclude the admission of Dr. Previll's testimony that it was "probable that [T.G.] was a victim of sexual abuse" was not based on any physical evidence or behaviors consistent with sexual abuse and was error. Since defendant did not object to Dr. Previll's opinion testimony, we consider whether this error constitutes plain error.

### 3. Plain Error

Our review of the entire transcript and record on appeal indicates the only evidence linking defendant to T.G. were her statements and other witnesses' corroborative testimony. A medical exam conducted six months after the last of "at least thirteen" alleged sexual assaults returned no evidence of vaginal trauma. T.G.'s contraction of Trichomonas is the sole physical evidence that any sexual activity occurred. Dr. Previll testified that sexual intercourse was not the only path of the disease's transmission, although she acknowledged that nonsexual transmission was "unlikely." T.G. initially told J.H. that defendant's stepson gave her the disease during intercourse. The stepson tested negative for the disease. No evidence was presented that defendant ever tested positive for Trichomonas. T.G.'s post-incident anger management at school was described to be "like many students." *See Couser*, 163 N.C. App. at 731, 594 S.E.2d at 423. In addition, T.G. recanted her allegations to Investigator Daniels.

. In the absence of any physical evidence, the admission of Dr. Previll's opinion testimony that "it was probable that [T.G.] was a victim of sexual abuse" was error. *See Couser*, 163 N.C. App. at 731, 594 S.E.2d at 423. The improperly admitted opinion by a medical expert

on T.G.'s credibility prejudiced defendant in the eyes of the jury. *See Odom, supra; see also Grover*, 142 N.C. App. at 421, 543 S.E.2d at 185 ("[W]e note that because all of the State's charges against defendant rest upon the alleged sexual abuse of defendant's two children, and because the inadmissible expert opinion lent credibility to the children's testimonies with no other supporting evidence, defendant is entitled to a new trial as to all charges.").

The State presented no other evidence beyond what T.G. told other witnesses. As such, T.G.'s credibility was the strength of the State's case and evidence was presented to put T.G.'s honesty in doubt. Consequently, any comment on T.G.'s credibility weighed heavily on all charges. The jury could have interpreted Dr. Previll's testimony of "probable sexual abuse" to include all of the sexual offenses defendant was charged with, even those not associated with physical injuries. *See Couser*, 163 N.C. App. at 731, 594 S.E.2d at 423. We hold the admission of Dr. Previll's expert medical opinion testimony was prejudicial to defendant and constitutes plain error.

We vacate defendant's convictions of: (1) attempted first-degree sex offense of a child under the age of thirteen years; (2) attempted statutory sex offense of a victim who was thirteen years old; (3) statutory rape of a victim who was thirteen years of age; and (4) taking indecent liberties with a child who was thirteen years old. In light of our holding, we do not address defendant's assignment of error regarding ineffective assistance of counsel.

### IV. Motion to Dismiss

**[2]** Defendant asserts the trial court erred in denying his motion to dismiss on all the charges due to the State's failure to show T.G. and defendant were not lawfully married during the period of time at issue. We address this issue because it may arise during any retrial of defendant and we disagree.

Defendant was charged with: (1) attempted first-degree sex offense of a child under the age of thirteen years; (2) attempted statutory sex offense of a victim who was thirteen years old; (3) statutory rape of a victim who was thirteen years of age; (4) taking indecent liberties with a child who was thirteen years old; (5) first-degree rape of a female under the age of thirteen years; and (6) taking indecent liberties with a child under the age of thirteen.

The charges of attempted statutory sex offense and statutory rape allow for the defense of marriage. However, it only applies if

the victim and perpetrator are *lawfully* married. *See* N.C. Gen. Stat. § 14-27.7A (2003). Under N.C. Gen. Stat. § 51-2(b1) (2003), defendant and T.G. could not be lawfully married. N.C. Gen. Stat. § 51-2(b1) states, "It shall be unlawful for any person under 14 years of age to marry." T.G. was between the ages of 11 and 13 during all the times and events at issue.

The remaining charges of: (1) attempted first-degree sex offense of a child under the age of thirteen years; (2) taking indecent liberties with a child who was thirteen years old; (3) first-degree rape of a female under the age of thirteen years; and (4) taking indecent liberties with a child under the age of thirteen do not permit lawful marriage as a defense. *See* N.C. Gen. Stat. § 14-27.4 (First-degree sexual offense), § 14-202.1 (Taking indecent liberties with children), and § 14-27.2(a)(1) (First-degree rape). This assignment of error is overruled.

## V. Conclusion

The admission of Dr. Previll's expert medical opinion testimony that it was "probable that [T.G.] was a victim of sexual abuse" was plain and prejudicial error concerning all charges against defendant. A new trial is ordered for: (1) attempted first-degree sex offense of a child under the age of thirteen years; (2) attempted statutory sex offense of a victim who was thirteen years old; (3) statutory rape of a victim who was thirteen years of age; and (4) taking indecent liberties with a child who was thirteen years old. Lawful marriage is not a defense to the charges brought against defendant. We decline to address defendant's assertion of ineffective assistance of counsel.

We order a new trial in 03 CRS 1673, 03 CRS 1674, 03 CRS 1675, and 03 CRS 1676.

New Trial.

Judges TIMMONS-GOODSON and GEER concur.