DILLON, Judge.
Jesus Martinez ("Defendant") appeals from judgments entered upon jury verdicts finding him guilty of eleven felonies arising from sexual conduct he engaged in with a minor child of his girlfriend: one count of rape of a child, two counts of sex offense with a child, four counts of indecent liberties, and four counts of sex offense in a parental role.
I. Background
The evidence at trial tended to show as follows: Defendant was cohabiting with his girlfriend ("Mother"), their infant child, and Mother's three children from a prior relationship. Mother testified that one morning, she walked into the bedroom she shared with Defendant and saw the sheets "moving up and down." She pulled back the sheets and saw her eight-year-old daughter, Chloe[1] , curled into a "little ball" and "hiding." Mother later asked Chloe what had been happening and Chloe replied that Defendant had engaged in certain sexual conduct with her. At trial, Chloe testified in detail regarding previous incidents where Defendant had told her to perform sexual acts. Defendant testified that he and Chloe had simply been spending time together in bed, that both had been fully clothed, and that Mother had misinterpreted the situation.
Mother informed law enforcement of the incident, and Defendant was subsequently arrested and indicted for numerous sexual offenses. Defendant was convicted of eleven felonies. Defendant timely appealed.
II. Analysis
Defendant makes the following arguments on appeal: (1) the trial court committed plain error by allowing a medical expert witness to vouch for Chloe's credibility, and that his counsel's failure to object to the expert's testimony constituted ineffective assistance of counsel; (2) remarks by a prospective juror during jury selection were grossly prejudicial and violated Defendant's right to a fair trial; (3) the trial court committed plain error when it instructed the jury that it could convict Defendant of some of the charges based on a theory not introduced at trial and a theory not alleged in the indictment; and (4) the trial court improperly excluded evidence Defendant sought to introduce to impeach the testimony of Chloe's mother. We address each argument in turn.
A. Expert Testimony
Defendant's first set of arguments relate to the testimony of Dr. Patricia Morgan, who was tendered and accepted by the trial court as an expert in pediatrics and child sexual abuse. During direct examination, Dr. Morgan made the following statement:
PROSECUTOR: ... [W]ould you be able to confirm [from a medical exam] whether or not [Chloe] could have experienced vaginal bleeding a month or so prior?
DR. MORGAN: It might be difficult to say because, again, that finding in and of itself I could see it in a girl who may not have experienced abuse. But in the fact that she did experience abuse , as well as have those findings of bleeding that she-
[DEFENSE COUNSEL]: Objection, Your Honor. She said allegedly.
THE COURT: What's your objection?
[DEFENSE COUNSEL]: We'll withdraw the objection.
[THE COURT]: You may continue, Dr. Morgan.
[DR. MORGAN]: Could you give me the question again, please? I want to make sure I'm answering it properly.
[PROSECUTOR]: Yes, ma'am. I was just asking if in looking at the hymen, if you knew one way or the other if she previously experienced bleeding. Can you tell by looking at it?
[DR. MORGAN]: If by looking at it I wouldn't be able to necessarily say if she had any bleeding because, again, the nature of the hymen is that it heals. And so I really couldn't say unless there was some residual or something that was evidence that shows that there was trauma.
(emphasis added).
On appeal, Defendant contends that this portion of Dr. Morgan's testimony-where she states that "in the fact that she did experience abuse"-constituted inadmissible expert opinion regarding Chloe's credibility , and therefore, its admission constitutes plain error. Defendant also contends that defense counsel's failure to object to Dr. Morgan's statement constitutes ineffective assistance of counsel.
In general, Dr. Morgan testified that Chloe's medical exam was normal, and that she could not determine from the exam whether or not Chloe had been sexually abused. In the absence of physical evidence to support a diagnosis of sexual abuse, expert testimony that sexual abuse has in fact occurred is not admissible because it is an impermissible opinion regarding the victim's credibility. State v. Stancil , 355 N.C. 266, 266-67, 559 S.E.2d 788, 789 (2002).
In the present case, we conclude that Dr. Morgan's statement, considered in the context of her testimony as a whole, does not amount to an assertion that Chloe was, in fact, abused. Rather, a proper understanding of the transcript is that Dr. Morgan was speaking of a hypothetical victim when she made the statement. Other cases from our Court which have found plain error have involved much more conclusory statements. In State v. Dixon , cited by Defendant, our Court found prejudicial error where an expert witness stated in response to a question: "My opinion was that she was sexually abused." State v. Dixon , 150 N.C. App. 46, 51, 563 S.E.2d 594, 598 (2002) ; see also State v. Towe , 366 N.C. 56, 60, 732 S.E.2d 564, 566 (2012) (finding plain error where expert stated that she would place the victim in the category of children who "have been sexually abused [and] have no abnormal findings"); State v. Bush , 164 N.C. App. 254, 259, 595 S.E.2d 715, 718 (2004) (finding plain error where expert stated: "My diagnosis was [that the child] was sexually abused by defendant"); State v. Couser , 163 N.C. App. 727, 732, 594 S.E.2d 420, 423-24 (2004) (finding plain error where expert testified that her diagnosis was "probable sexual abuse").
Further, because we do not believe that the statement by Dr. Morgan amounted to expert testimony that Chloe was in fact abused, defense counsel's failure to object was not error. Accordingly, Defendant's arguments are overruled.
B. Juror Remarks
Defendant argues that a statement by one of the prospective jurors was grossly prejudicial and violated Defendant's constitutional right to an impartial jury and amounted to plain error. Specifically, Defendant contends that a juror's statement that the juror's uncle was a local defense attorney who had told her his job was to "get the bad guys off" amounted to a comment on Defendant's guilt from a reliable source. We disagree.
The sole case cited by Defendant in support of this argument is State v. Gregory , in which a prospective juror stated that she helped prepare the defense for the defendant and had learned confidential information that would be favorable to the State if learned by the State. State v. Gregory , 342 N.C. 580, 587, 467 S.E.2d 28, 33 (1996). Our Supreme Court concluded that these statements "[were] likely to cause the [other] jurors to form an opinion before they heard any evidence at trial, and [ ] a juror who has formed an opinion cannot be impartial." Thus, the Court held that this statement denied the defendant a fair trial.
In contrast, here, the juror's statement was general and did not imply that the juror had any particular knowledge of Defendant's case or the possibility that Defendant might be guilty. We do not believe that the trial court's failure to take specific action addressing the juror's comment amounted to plain error. See State v. Black , 328 N.C. 191, 196, 400 S.E.2d 398, 401 (1991) (stating that the trial court "has broad discretion to see that a competent, fair and impartial jury is impaneled") (internal marks omitted).
C. Jury Instructions
Defendant's third set of arguments relate to the trial court's instruction of the jury regarding six of his felony convictions: two counts of sexual offense with a child and four counts of sexual offense in a parental role. Defendant contends that the trial court committed plain error when it instructed the jury on (1) a theory that was not supported by evidence introduced at trial and (2) a theory that was not alleged in the indictment.
Both N.C. Gen. Stat. § 14-27.4(a)(1) (first degree sexual offense with a child) and N.C. Gen. Stat. § 14-27.7(a) (sex offense in a parental role) require that a jury find that a defendant engaged in a "sexual act" with the victim. N.C. Gen. Stat. § 14-27.4 (2013) ; N.C. Gen. Stat. § 14-27.7 (2013). "Sexual act," as defined in N.C. Gen. Stat. § 14-27.1(4), means "cunnilingus, fellatio, analingus, or anal intercourse," but does not include vaginal intercourse. N.C. Gen. Stat. § 14-27.1(4) (2013).
It appears from the record that the trial court intended to instruct the jury that it could find Defendant guilty of these six offenses if it found that he committed the sexual act of "fellatio" or "anal intercourse" with Chloe; however, the trial court erroneously included "analingus" in its instructions. The State did not present any evidence of analingus at trial.
Our Supreme Court has held on a number of occasions that "[w]here the trial court erroneously submits the case to the jury on alternative theories, one of which is not supported by the evidence ..., and [ ] it cannot be discerned from the record upon which theory or theories the jury relied in arriving at its verdict, the error entitles [a] defendant to a new trial." State v. Lynch , 327 N.C. 210, 219, 393 S.E.2d 811, 816 (1990) ; see also State v. Pakulski , 319 N.C. 562, 574, 356 S.E.2d 319, 326 (1987).
Here, the addition of "analingus" to the jury instruction defining "sexual act" allowed the jury to find defendant guilty of these offenses if it found that Defendant committed only analingus with Chloe. Because there was no evidence of analingus in this case, we must conclude that there was an ambiguity as to which sexual act the jury found Defendant had committed, and therefore, "[must] resolve [this] ambiguity in favor of [D]efendant." Pakulski , 319 N.C. at 574, 356 S.E.2d at 326. Accordingly, we vacate Defendant's convictions for sex offense with a child and sex offense in a parental role.[2]
D. Impeachment Evidence
Finally, Defendant argues that the trial court committed prejudicial error when it excluded relevant evidence which tended to show Mother's bias against him. On cross-examination, the trial court sustained the State's objections to defense counsel's attempt to elicit testimony from Mother on four different subjects; namely, that Mother (1) had recently discovered Defendant had another girlfriend, (2) was attempting to obtain a "U-visa"[3] to allow her to remain in the United States legally after the trial, (3) was upset that Defendant refused to lend her money, and (4) had previously accused Defendant of domestic violence. On appeal, Defendant contends that the trial court's exclusion of this impeachment evidence constitutes prejudicial error. We conclude that Defendant failed to preserve his challenge as to the first three forms of impeachment evidence; further, we conclude that the exclusion of the fourth form did not constitute prejudicial error.
In order to preserve this issue for appellate review, "the significance of the excluded evidence must be made to appear in the record[.] [A] specific offer of proof is required unless the significance of the evidence is obvious from the record." State v. Simpson , 314 N.C. 359, 370, 334 S.E.2d 53, 60 (1985). "[T]he essential content or substance of the witness's testimony must be shown before [the reviewing court] can ascertain whether prejudicial error occurred." Id. ; see also State v. Willis , 285 N.C. 195, 200, 204 S.E.2d 33, 36 (1974) ("The words of the witness ... should go in the record.").
In this case, the trial court did not hear Mother's responses to Defendant's first three lines of questioning. Defendant contends that statements he made during his testimony and at his sentencing hearing were an "offer of proof;" however, Defendant's speculation as to what the content of Mother's testimony would have been is not sufficient to show the actual "content or substance of [Mother's] testimony[.]" Simpson , 314 N.C. at 370, 334 S.E.2d at 60. Without her testimony in the record, it is impossible for this Court to determine whether Defendant's arguments have merit. As in Simpson , "[w]e fail to discern any reason why defense counsel could not have made an offer of proof by having the [witness] called to the stand in the absence of the jury and questioned about [her responses]...." Simpson , 314 N.C. at 371, 334 S.E.2d at 61. Accordingly, Defendant has failed to preserve these issues for our review.
On the fourth line of questioning, however, the State concedes that Defendant did make an offer of proof that Mother had previously accused Defendant of domestic violence. "Although we review a trial court's ruling on the relevance of evidence de novo , we give a trial court's relevancy rulings great deference on appeal." State v. Capers , 208 N.C. App. 605, 615, 704 S.E.2d 39, 45 (2010) (internal marks omitted).
The record shows that during a bench conference, Defendant's counsel indicated that Mother had accused Defendant of domestic violence, that the police declined to prosecute him, that she subsequently took out a private warrant against Defendant, and that she failed to appear in court to prosecute that warrant. We agree with Defendant that exclusion of this evidence was error. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (2013). Evidence that Mother had accused Defendant of domestic violence could have indicated Mother's bias against Defendant and may have influenced the jury's assessment of her credibility as a witness.
However, considering the entire record of Defendant's trial, we do not believe that there is a reasonable possibility that, had the jury heard evidence regarding Mother's accusation of past domestic violence by Defendant, a different result would have been reached at trial. N.C. Gen. Stat. § 15A-1443(a) ; see State v. Turner , 268 N.C. 225, 232, 150 S.E.2d 406, 411 (1966). Mother offered eyewitness testimony concerning one of the acts of sexual conduct, and Defendant did not contradict her testimony that she saw something . Specifically, she stated that, on a single occasion, she discovered Defendant in bed with Chloe and that the covers were "moving up and down." Defendant did not contradict Mother's testimony, but instead offered an innocent explanation of the incident. The remainder of Mother's testimony involved what Chloe had told her about other acts of sexual conduct by Defendant. However, Chloe herself testified at trial regarding the acts of Defendant. And the jury was allowed to view a recording of a prior interview with Chloe and compare it with her testimony at trial. Further, Chloe's brother testified that on several occasions while the children were home alone with Defendant, Defendant would take the infant child and Chloe into the bedroom and lock the door.
In light of the other evidence presented at trial which tended to establish Defendant's guilt, we are unable to conclude that Defendant was prejudiced by the exclusion of the evidence regarding Mother's prior accusation of domestic violence.
III. Conclusion
We find no prejudicial error in Defendant's convictions of one count of rape of a child and four counts of taking indecent liberties with a child.[4]
We vacate Defendant's convictions of two counts of first-degree sexual offense with a child and four counts of sex offense in a parental role and remand for further proceedings consistent with this opinion, which may include a new trial on these charges.
VACATED AND REMANDED IN PART, NO PREJUDICIAL ERROR IN PART.
Report per Rule 30(e).
Judges BRYANT and STEPHENS concur.

A pseudonym.

The corresponding file numbers are as follows: 14 CRS 217447, 14 CRS 217448, 14 CRS 217453, 14 CRS 217456, 14 CRS 217458, 14 CRS 217459.

A "U-visa" is a type of visa available to victims of serious crimes who are undocumented immigrants and cooperate with law enforcement in the investigation or prosecution of crimes. 8 U.S.C. § 1101(a) (15(U).

Defendant also submitted a petition for writ of certiorari to this Court for review of the trial court's order requiring him to register as a sex offender and enroll in satellite-based monitoring ("SBM"). We exercise our discretion pursuant to N.C. R. App. P. 21(a)(1) to consider Defendant's argument on this point. However, because we have left Defendant's conviction of rape of a child pursuant to N.C. Gen. Stat. § 14-27.2A undisturbed, we affirm the trial court's order in this regard. See N.C. Gen. Stat. § 14-208.40A(c) (2013) ; N.C. Gen. Stat. § 14-27.2A (2013) ; N.C. Gen. Stat. § 14-208.6(1a) (2013).